**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSEPH BARBATO,

       *Plaintiff,*

  -against-

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., and TRANS UNION,
LLC,

       *Defendants.*

Case No. 7:24-cv-4052-PMH

**COMPLAINT**

**JURY TRIAL DEMANDED**

   By and through the undersigned counsel, Plaintiff Joseph Barbato ("Plaintiff"), with

knowledge as to his own acts and investigation of counsel as to the acts of others, and believing

that further investigation and discovery will confirm that the allegations recited herein have

substantial evidentiary support, states as follows:

## Introduction

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New

  York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"),

  Plaintiff brings this civil rights action against Defendants Experian Information Solutions,

  Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC

  ("Trans Union") (together, the "CRA Defendants") to recover actual, statutory, and punitive

  damages. In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-

  shifting action.

2. In 1970, Congress passed the FCRA and enshrined within it the "need to insure that

  consumer reporting agencies" like the CRA Defendants "exercise their grave responsibilities

with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4).

3. "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)." *Dep't. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 464 (2024).

4. The purpose of the FCRA is "to require that consumer reporting agencies" like CRA Defendants "adopt reasonable procedures for [reporting information] a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information . . . ." § 1681(b) (emphasis added). *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (observing that the purpose of the FCRA is to address the "serious problem in the credit reporting industry . . . of inaccurate or misleading information"); *Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (stating that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . .") (citing 116 Cong. Rec. 36572 (1970)).

5. The public policy objectives underlying the FCRA remain relevant and compelling today as ever. As recently as October 2022, Congress recognized the CRA Defendants' continued systemic "failures to efficiently respond to and resolve credit reporting inaccuracies raised by consumers."[1]

---

[1] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports, Press Release*, 117th Congress (Oct. 14, 2022), https://coronavirus.house.gov/news/press-releases/clyburn-cfpb-chopra-equifax-experian-transunion.

6.  The bipartisan subcommittee's investigation found "longstanding problems with" CRA Defendants' "practices for responding to consumers who challenge credit report errors."

7.  For example, the investigation found that the CRA Defendants "disregard millions of disputes each year without investigation" based on "speculative or overly broad criteria," in a manner "contrary to the FCRA."

8.  Evidence further suggested that the CRA Defendants "may not be allocating enough staff to adequately investigate disputes."

9.  The CRA Defendants' policies and procedures to avoid inaccuracies are so insufficient that they often fail to identify and remove even "facially false data," including entries that are "logically inconsistent" or "impossible."[2]

10. The congressional subcommittee found that the CRA Defendants "have attempted to shift the responsibility–and blame–for the accuracy of consumer report data onto data furnishers."[3] Instead of fulfilling their independent investigatory duties under the FCRA, the CRA Defendants "engage in 'parroting,' a practice of blindly adopting the response of a data furnisher without conducting any independent investigation." Such investigations are "insufficient" under the FCRA.[4]

11. Indeed, as recently as April 8, 2024, the CFPB acknowledged "continuing accuracy problems in the credit reporting system," specifically finding that the CRA Defendants "failed to

---

[2] *See generally Advisory Opinion on Fair Credit Reporting; Facially False Data*, Bureau of Consumer Financial Protection, 12 CFR Part 1022 (October 20, 2022).
[3] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 5, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.
[4] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports, Press Release, supra*, (citing *Automated Injustice Redux, Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Report Errors*, National Consumer Law Center (February 2019), http://www.nclc.org/wp-content/uploads/2022/08/automated-injustice-redux.pdf.)

ensure the accuracy of credit reports, including by failing to exclude information resulting from alleged identity theft."[5]

12. The federal agency found that consumer reporting companies such as the CRA Defendants systemically violated their FCRA obligations to identity theft victims such as Plaintiff, especially their obligation to block the reporting of disputed information.[6]

13. Plaintiff's experience typifies Congress's findings. A victim of identity theft, Plaintiff disputed the inaccurate, fraudulent J.P. Morgan Chase Bank and American Express accounts on his credit reports with each CRA Defendant. In response, each CRA Defendant failed to reasonably investigate the disputes and delete the fraudulent accounts, recklessly violating the FCRA and denying Plaintiff's rights under that statute.

14. Congress's findings echo what juries and courts have long found in individual cases regarding damages: FCRA violations can have "serious, long-term consequences for consumers, such as blocking access to permanent housing or preventing small businesses from obtaining much-needed lines of credit."[7]  Consumers like Plaintiff "are experiencing no small measure of stress, frustration, and financial hardship as a result of [the CRA Defendants] failure to correct legitimate errors on their credit reports."[8]  As recounted below, Plaintiff suffered extensively as a result of Defendants' violations of his consumer rights under the FCRA.

---

[5] *CFPB Finds Violations of Credit Report Accuracy Requirements, Including for Survivors of Human Trafficking, Press Release,* April 8, 2024.
[6] The "companies refused to honor consumer requests to block information associated with identity theft based on overbroad criteria; failed to inform consumers when blocks were denied or rescinded; [and] failed to provide victims of identity theft with summaries of rights." *Id.*
[7] *Select Subcommittee Launches Investigation Into Credit Reporting Failures During Pandemic, Press Release*, 117th Congress (May 25, 2022).
[8] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 7, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.

**Summary of Plaintiff's Claims Against Defendants Pursuant to**

**the Fair Credit Reporting Act and/or New York Fair Credit Reporting Act**

15. Defendants violated NY FCRA § 380-j(e) and FCRA § 1681e(b) by failing to maintain reasonable procedures to assure the maximum possible accuracy of information it reported about Plaintiff.

16. Each CRA Defendant violated NY FCRA § 380-j(a)(3) by maintaining in and reporting from the credit file it maintained about Plaintiff information it had reason to know was inaccurate and that, in fact, resulted when Plaintiff was the victim of identity theft.

17. The CRA Defendants violated NY FCRA § 380-j(e) and FCRA § 1681e(b) by failing to maintain reasonable procedures to assure the maximum possible accuracy of information they reported about Plaintiff.

18. Each CRA Defendant violated NY FCRA § 380-f(a) and FCRA § 1681i(a)(1) by failing to conduct reasonable investigations after Plaintiff disputed certain information in credit reports it published about him.

19. Each CRA Defendant violated NY FCRA § 380-f(b)(1) and FCRA § 1681i(a)(5) by failing to promptly delete disputed information from credit files they maintained about Plaintiff despite the fact that, had they conducted reasonable investigations of Plaintiff's disputes, they could not have affirmatively verified that the disputed information was accurate.

20. Each CRA Defendant violated FCRA § 1681c-2 by failing to block the reporting of information in Plaintiff's file that Plaintiff identified as having resulted from identity theft.

21. Each CRA Defendant violated FCRA §§ 1681i(b) and (c), as well as NY FCRA §§ 380-f(c)(2) and (3), by failing to provide Plaintiff's duly filed statement of dispute in subsequent consumer reports containing the information in question.  Each CRA Defendant also violated

NY FCRA § 380-f(c)(4) by failing to note in subsequent consumer reports that the information in question had been disputed by Plaintiff and also violated § 380-f(c)(1) by failing to note in the files that they kept about Plaintiff that the information had been disputed by Plaintiff.

22. Each CRA Defendant violated FCRA § 1681i(a)(6)(B)(iii) by refusing to provide Plaintiff with descriptions of their reinvestigation procedures upon request.

23. As a direct and proximate result of Defendants' violations of the FCRA and NY FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

24. A reasonable reinvestigation should have included, and the CRA Defendants' investigations did not include or give appropriate weight to, the following items of information included in Plaintiff's dispute(s) or otherwise in Defendants' possession:

   a. Plaintiff's duly filed FTC Identity Theft Affidavit(s);

   b. Plaintiff's police report and the associated Police investigation;

   c. Recordings of calls and records of interactions with Plaintiff;

   d. All other information included in Plaintiff's disputes and interactions with each Defendant as detailed below.

25. As a direct and proximate result of Defendant's willful violations of the FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

## Jurisdiction and Venue

26. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p. This Court has supplemental jurisdiction of state claims asserted herein under New York law pursuant to 28 U.S.C. § 1367(a).

27. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(d).

## The Parties

28. Plaintiff Joseph Barbato is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)).  Plaintiff resides in Rockland County, New York.

29. Defendant Equifax Information Services LLC is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

30. Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

31. Defendant Trans Union LLC is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## Statement of Facts

*Background*

32. Plaintiff Joseph Barbato is a veteran of the financial services industry and a former C-suite executive at Deutsche Bank.

33. Mr. Barbato is also a victim of identity theft.

34. The thief opened a number of business credit cards in Mr. Barbato's name, including, inter alia, two false Chase credit cards; a false Capital One card; a false Citi Costco card; and two false American Express cards.

35. In 2022, Plaintiff became aware of these cards via communications from the ostensible creditors and, in the case of Chase and Capital One, his Equifax, Experian, and Trans Union credit reports.

36. Plaintiff discovered two false Chase credit accounts on his Equifax, Experian, and Trans Union reports in late 2022, along with other inaccuracies including, upon information and belief, the false Capital One Spark card.

*Plaintiff's First Dispute(s)*

37. In early December 2022, Mr. Barbato filed a police report with the Orangetown Police Department detailing the theft and mentioning the fraudulent Chase, Capital One, Citi Costco, and American Express credit cards.

38. Upon discovery, Plaintiff disputed at least some of the fraudulent credit cards with Equifax, including a dispute in November 2022.

39. Upon information and belief, around that time, Plaintiff also disputed at least some of the fraudulent accounts with Trans Union and Experian.

40. On November 25, 2022, Equifax issued dispute results that, upon information and belief, failed to correct the false reporting in violation of the FCRA.

41. As of June 2023, all three CRA Defendants, Equifax, Experian, and Trans Union, were still reporting the disputed accounts.  Experian was at that time reporting one of the false Chase accounts as disputed, but, otherwise, none of the CRA Defendants was reporting any of the

disputed accounts as disputed. Upon information and belief, they had also not recorded them as disputed in the files they kept about Plaintiff.

42. On January 8, 2023, Plaintiff's credit line on his Citibank, N.A. credit card was decreased to $3860, leaving Plaintiff less than $100 of credit available beyond his existing balance on that card.

43. In January 2023, because the false reporting persisted, Plaintiff filed an Identity Theft Report with the Federal Trade Commission detailing the theft and mentioning the fraudulent Chase, Capital One, and American Express accounts.

44. These reports were provided to Equifax, Experian, and TransUnion.

45. Upon information and belief, in or around spring 2023, Equifax, Experian, and TransUnion deleted the fraudulent Capital One card and Citi Costco card but continued to maintain the false, fraudulent Chase cards on their respective credit files for Plaintiff.

46. In or around April 2023, Chase charged off the false cards as bad debt. Now reporting as "Charged Off" on Plaintiff's three credit reports, the false accounts severely damaged his credit score and ruined his otherwise excellent reputation for creditworthiness.

*Plaintiff's Second Dispute(s)*

47. In June 2023, the two false, charged-off Chase cards were still reporting on Plaintiff's reports, so Plaintiff filed another FTC Identity Theft affidavit about them. The affidavit again identified the two fraudulent American Express credit cards accounts.

48. This updated affidavit also mentioned fraudulent inquiries that appeared on Plaintiff's credit report.

49. In June 2023, Plaintiff submitted another dispute letter to Equifax, Experian, and TransUnion attaching the updated FTC affidavit, detailing the false reporting, asking for it to be deleted.

50. Plaintiff disputed the two American Express accounts even though they had not yet appeared on his Equifax, Experian, and Trans Union reports.  Based on communications from American Express, Plaintiff had become aware of the fraudulent accounts and also worried that they would eventually become fraudulent entries on his credit reports if an investigation was not performed.  His letter put Equifax, Experian, and Trans Union on notice of the false American Express accounts.

51. Of course, the fraudulent Chase credit cards were indeed reporting on Plaintiff's credit reports at that time and Plaintiff asked that they be investigated and deleted.

52. Plaintiff's June dispute letter alternative asked the CRA Defendants to insert a statement of dispute that Plaintiff had provided in the letter on Plaintiff's credit file noting that the false Chase accounts resulted from identity theft.

53. Specifically, Plaintiff requested that "the following statement of dispute" be added to his reports: "My identity was stolen by a former business associate who opened up this card or took out this delinquent credit. It is not mine and should not be on my credit report."

54. Plaintiff's June dispute letter also asked for "a description of the procedure used to determine the accuracy and completeness of the information from my prior dispute of these accounts."

*Equifax's Response to Plaintiff's Second Dispute*

55. Upon information and belief, Equifax received Plaintiff's dispute in late June or early July.

56. On July 11, 2023, Equifax sent dispute results which said that the disputed Chase accounts were "NOT CURRENTLY REPORTING ON THE EQUIFAX CREDIT FILE."

57. But on Plaintiff's July 21, 2023, Equifax credit report, the Chase accounts were indeed reporting on his credit file.

58. Equifax failed to mark the Chase accounts as disputed.  On Plaintiff's July 21 Equifax report, the Chase accounts bore no statement of dispute and were not marked as disputed whatsoever.  On information and belief, Equifax had also not marked these accounts as disputed in the credit file it maintained about Plaintiff.

*Experian's Response to Plaintiff's Second Dispute*

59. Upon information and belief, Experian received Plaintiff's dispute in late June or early July.

60. On June 23, 2023, Experian told Plaintiff its "reinvestigation" of the two disputed Chase credit cards was "now complete."

61. The document showed that the cards were still reporting on Plaintiff's Experian report, marked as "disputed."

62. But the document, elsewhere, also stated that Experian's investigation of the accounts was "Still pending," thus contradicting itself.

63. As of July 21, 2023, the false Chase cards were no longer reporting on Plaintiff's Experian report.

*Trans Union's Response to Plaintiff's Second Dispute*

64. Upon information and belief, Trans Union received Plaintiff's dispute in late June or early July.

65. On July 13, 2023, TransUnion "verified" the accuracy of the false Chase credit card accounts.

66. Trans Union failed to mark the Chase accounts as disputed.  On Plaintiff's July 21 Trans Union report, the Chase accounts bore no statement of dispute and were not marked as disputed whatsoever.  Upon information and belief, Trans Union had also not marked the accounts as disputed in the credit files it maintained about Plaintiff.

*Damages in August 2023*

67. As of August 2023, the fraudulent Chase credit card accounts were the only derogatory accounts on Plaintiff's file (aside from a solitary 30-day-late mark on a Wells Fargo loan which was arguably derogatory but not seriously so).

68. Due to the false reporting, Plaintiff's credit score was about 624. Upon information and belief, if not for the false reporting, Plaintiff's score would be in the 800 range.

69. On August 2, 2023, American Express informed Plaintiff that they had canceled his (legitimate) credit card accounts.

70. This put Plaintiff in need of credit, especially after having his Citi card limit reduced earlier that year.

71. Accordingly, Plaintiff began shopping around for other credit cards.

*Plaintiff's Apple Card Application*

72. On or around August 4, 2023, Plaintiff applied to Apple and Goldman Sachs for an Apple credit card.

73. Plaintiff's application was denied on the basis of a "serious delinquency" on his Trans Union report.

74. The false Chase accounts were the only serious delinquencies on Plaintiff's TransUnion report; aside from those accounts his credit is excellent.

75. Trans Union's false reporting has thus hindered Plaintiff's access to credit and prevented him from replacing the cards that were closed due to the identity theft, further compounding the financial damage and emotional trauma caused by the theft.

*Plaintiff's Pentagon Federal Credit Union Credit Card Application*

76. Soon thereafter, Plaintiff applied to Pentagon Federal Credit Union ("PenFed") for a credit card.

77. On August 11, PenFed denied Plaintiff's application on the basis of "serious delinquencies" on his Equifax credit report, and for the reason that the "time since [the] delinquency" or "collection," as reported by Equifax, was too recent.

78. On August 21, another of Plaintiff's (legitimate) American Express accounts was canceled.

79. Equifax's false reporting has thus hindered Plaintiff's access to credit and prevented him from replacing the cards that were closed due to the identity theft, further compounding the financial damage and emotional trauma caused by the theft.

*The False American Express Accounts*

80. At some point before November 9, 2023, Plaintiff became aware that one of the two fraudulent American Express cards, which he had already preemptively alerted the CRA Defendants to, had now appeared as collections on his Experian, Equifax, and Trans Union reports.

81. This was especially surprising given that Plaintiff had not only put the credit bureaus on notice as to the account's falsity, but also because Plaintiff had always made timely payments on his two legitimate American Express cards (along with all his other cards and loans), never so much as being late.

82. Plaintiff's Equifax and Experian reports noted that the account was disputed.

83. Equifax said an "investigation" had been "completed" regarding the account in September 2023, further reporting that the "consumer disagrees" with its resolution.

*Plaintiff's Third Dispute(s)*

84. On or around November 10, 2023, Plaintiff filed another dispute letter with Equifax, Experian, and Trans Union.

85. Plaintiff's dispute attached his FTC Identity Theft Affidavit and his police report filed with the Orangetown Police Department.

86. Plaintiff's disputes to Equifax and Trans Union identified and disputed the two fraudulent Chase credit cards as well as the fraudulent American Express card which had appeared on Plaintiff's reports.

87. Plaintiff identified the account as ending in 1293 on his Equifax Report and as beginning in 34999285 on his Experian and Trans Union reports.

88. Plaintiff noted that all three accounts resulted from identity theft.

89. Plaintiff's dispute to Experian listed only the fraudulent American Express card since Experian was no longer reporting the two fraudulent Chase credit card accounts. Plaintiff noted that the American Express account resulted from identity theft.

90. Plaintiff also identified the following false information, which Plaintiff suspected was used to perpetuate the identity theft:

    - Address: 516 S DIXIE HWY, WEST PALM BEACH, FL, 33401

    - Unrecognized phone number: (212) 989-2739/Residential

    - Unrecognized phone number: (845) 408-5680/Pager

91. Plaintiff has never lived in Florida; in fact, the 516 S. Dixie Highway address is, upon information and belief, the address of a UPS Store.

92. To each dispute, Plaintiff attached copies of his driver's license, Social Security card, and proof of address.

93. Plaintiff also asked for "a description of the procedure used to determine the accuracy and completeness of the information from my prior dispute(s) of these accounts."

94. Plaintiff also requested that a specific statement of dispute be added to the Chase cards and the American Express card.

95. Specifically, with respect to the American Express card, Plaintiff asked for the following statement of dispute to be added: "My identity was stolen by an abusive former employer who opened up this card or took out this delinquent American Express credit line. It is not mine and should not be on my credit report. I have sent this credit bureau a duly filed FTC Identity Theft report and a police report. Please contact me for more details at 917-992-8416."

*Equifax's Response to Plaintiff's Third Dispute*

96. Equifax received Plaintiff's dispute on November 22, 2023.

97. On November 25, 2023, Equifax wrote to Plaintiff noting that his "identity" did "not match the information we currently have on" Plaintiff's credit file.

98. That fact, if true, should have been a clear indicator of identity theft, motivating Equifax to investigate and accept Plaintiff's fraud claims.

99. Instead, Equifax refused to investigate Plaintiff's claims.

100. Equifax requested that Plaintiff send a copy of his Social Security card and proof of address—both of which Plaintiff had already sent Equifax with his dispute letters.

101. Plaintiff had sent all that information already. (As recounted below, neither Experian nor Trans Union asked Plaintiff for any additional documentation.)

102. Equifax failed to investigate Plaintiff's Third Dispute within the permissible time frame under the FCRA.

103. Equifax failed to provide "a description of the procedure used to determine the accuracy and completeness of the information from [Plaintiff's] prior dispute(s) of these accounts."

104. Equifax failed to include Plaintiff's specific statement(s) of dispute in subsequent credit reports.  Equifax also did not mark the disputed accounts as disputed, and, on information and belief, also did not record them as disputed in the credit file it maintained about Plaintiff.

*Experian's Response to Plaintiff's Third Dispute*

105. Experian received Plaintiff's dispute on November 22, 2023.

106. Plaintiff received no explicit response from Experian to his dispute.

107. On November 27, Experian sent Plaintiff a credit report saying that in "October 2023," it had "investigat[ed]" and verified the American Express account.

108. Experian failed to include Plaintiff's specific statement(s) of dispute in subsequent credit reports.

*Trans Union's Response to Plaintiff's Third Dispute*

109. On November 22, 2023, Trans Union told Plaintiff that it had "investigated the information you disputed."

110. Trans Union told Plaintiff that the American Express account had been "VERIFIED AS ACCURATE."

111. Trans Union did not say anything about its disposition of the Chase credit card accounts' investigation.

112. Trans Union also said it had verified the S. Dixie Highway, West Palm Beach address, even though Plaintiff told Trans Union he had never lived in Florida, and even though that address belonged to a UPS Store.

113. Trans Union failed to include Plaintiff's specific statement(s) of dispute in subsequent credit reports.

114. As of February 20, 2024, Trans Union has reported an additional fraudulent American Express on Plaintiff's Trans Union report, beginning in 34999284, in addition to the fraudulent American Express account beginning in 34999285.

115. This is despite the fact that, since as early as November 2022, Plaintiff has been telling Trans Union that the identity thief opened two fraudulent American Express accounts in his name.

*Equifax's Response to Plaintiff's Fourth Dispute*

116. In January, Plaintiff was compelled to send Equifax a fourth dispute since Equifax had refused to investigate Plaintiff's third dispute to Equifax, on the false basis that he had not provided the requisite documentation.

117. Upon information and belief, Plaintiff's fourth dispute to Equifax contained all the same contents as the third dispute, as described above, including all the identifying documentation requested by Equifax.

118. On February 2, 2024, Equifax told Plaintiff that it was refusing to block the information named in his dispute letter and identity theft and police reports.

119. Equifax did so under the false premise that Plaintiff had not provided "proof of [his] identity" or law enforcement reports—even though Plaintiff had indeed done so several times over.

120. The next day, on February 3, 2024, Equifax told Plaintiff that all the disputed information—including both Chase accounts and the American Express account—was "not currently reporting on the Equifax credit file."

121. In fact, the false American Express account ending in 1293 was indeed still reporting on Plaintiff's Equifax report as of February 20, 2024.

122. Equifax failed to include Plaintiff's specific statement of dispute in subsequent credit reports. In addition, Equifax had not even reported the account as disputed, nor, on information and belief, had it recorded it as disputed in the credit file it maintained about Plaintiff. Bizarrely, Equifax did report one of Plaintiff's legitimate American Express accounts, which he had not disputed, as disputed.

*Damages in 2024*

123. As of February 20, 2024, the fraudulent Chase and American Express credit cards were no longer reporting on Plaintiff's Experian report. This is not before the false, derogatory information about Plaintiff's reputation for creditworthiness was published to third parties numerous times, including American Express, Chase, and Capital One.

*Plaintiff's Wells Fargo and Bank of America Credit Card Denials*

124. In March 2024, Plaintiff began applying for credit cards again.

125. Plaintiff's application for a credit card from Wells Fargo was rejected on the basis that there was a "serious delinquency" on his Experian report.

126. Plaintiff's application for a credit card from Bank of America was rejected on the basis that there was a "delinquency" on his Experian report.

*Plaintiff's Employment-Related and Emotional Damages*

127. Plaintiff has been applying for jobs for months.

128. In Plaintiff's line of business, not only is an applicant's credit typically run as part of an application, but also a business credit card is typically required for travel and other job responsibilities.

129. The adverse reporting by Experian, Equifax, and Trans Union has caused Plaintiff stress as he has worried that the false reporting will prevent him from landing a job in his industry.

130. At all times pertinent hereto, the conduct of each Defendant as well as its respective agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for the rights of Plaintiff pursuant to the FCRA and/or NY FCRA.

131. As a direct and proximate result of the willful and negligent actions, conduct, and omissions of each Defendant, Plaintiff suffered cognizable actual damages, including but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

132. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

133. Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the FCRA including but not necessarily limited to the following violations:

   a. Defendants each violated 15 U.S.C. § 1681c-2;

   b. Defendants each violated 15 U.S.C. § 1681e(b);

   c. Defendants each violated 15 U.S.C. § 1681i(a)(1);

   d. Defendants each violated 15 U.S.C. § 1681i(a)(4);

   e. Defendants each violated 15 U.S.C. § 1681i(a)(5);

   f. Defendants each violated 15 U.S.C. § 1681i(b); and

   g. Defendants each violated 15 U.S.C. § 1681i(c).

134. Due to the separate and independent violations of the FCRA by the CRA Defendants, Plaintiff suffered actual damages, including but not limited to damage to Plaintiff's

reputation, embarrassment, humiliation, anguish, and other emotional harm cognizable pursuant to the FCRA.

135. These violations by the CRA Defendants of §§ 1681c-2, 1681e, and 1681i were willful, rendering each CRA Defendant liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

136. In the alternative, these FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NY FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

137. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

138. Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the NY FCRA (NY GBL §§ 380-380-u) including, but not necessarily limited to, the following violations:

   a. Defendants each violated § 380-j(a);

   b. Defendants each violated § 380-j(e);

   c. Defendants each violated § 380-f(a);

   d. Defendants each violated § 380-f(c)(1);

   e. Defendants each violated § 380-f(c)(2);

   f. Defendants each violated § 380-f(c)(3); and

   g. Defendants each violated § 380-f(c)(4).

139. These violations by the CRA Defendants of NY FCRA §§ 380-j and 380-f were willful,

rendering each CRA Defendant liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to NY FCRA § 380-l.

140. In the alternative, these NY FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to NY FCRA § 380-m.

141. Plaintiff is also entitled to injunctive relief restraining the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding against each Defendant actual damages, statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as NY GBL § 380-l and § 380-m.

2. Ordering Defendants to:

   a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants reported consumer credit information; and

   b. send updated and corrected credit report information to all persons and entities to whom the CRA Defendants reported inaccurate information about Plaintiff within the last three years;

3. Enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights; and

4. Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and New York Civil Practice Law and Rules ("CPLR") § 4102, Plaintiff demands a trial by jury as to all issues so triable.

*/s/ Adam G. Singer*
Adam G. Singer
**LAW OFFICE OF ADAM G. SINGER, PLLC**
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
212.842.2428
asinger@adamsingerlaw.com
*Counsel for Plaintiff Joseph Barbato*